UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMERICA BANK,

    Plaintiff(s),

v.

FGMK, LLC,

    Defendant(s).
_____/

Case No. 09-14520

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS, OR ALTERNATIVELY FOR TRANSFER [4]**

This matter comes before the Court on Defendant's motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); or, in the alternative, for transfer of venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Defendant's motion is GRANTED.

**I.    Facts**

Plaintiff Comerica Bank (Comerica) brought suit against Defendant FGMK, LLC (FGMK) based on representations made—during FGMK's performance of professional accounting services for a mutual client, Sysix Technologies, LLC (Sysix)—between 2001 and 2008. Comerica claims that "it is a victim of a massive, $20 million dollar plus corporate fraud by non-party borrower Sysix ... that went undetected for many years by Sysix's auditor, ... FGMK." (Pl.'s Resp. at 2.)

Sysix entered into a loan agreement with Comerica in January 2001 by which Comerica agreed to extend a line of credit to Sysix. (Compl. ¶ 5; Compl., Ex. A.) The loan agreement was amended every year from 2001 through 2008. (Compl. ¶ 9; Compl., Ex. B.) As part of its due diligence and administration of the Sysix loan, Comerica required that Sysix provide periodic audited financial statements from an independent certified public accountant. (Compl. ¶ 7; Compl., Ex. A §§ 4.1(a), (e).) Specifically, the loan agreement required the following audited reports: (1) on or before February 28, 2001, an opening balance sheet; and (2) within 90 days following each of Sysix's subsequent fiscal years, a balance sheet, statement of profit and loss, and changes in cash flow. (*Id.*) The loan agreement also required quarterly statements certified by Sysix's chief financial officer setting forth all computations necessary to demonstrate compliance with the financial covenants set forth in the loan agreement. (Compl. ¶¶ 7-8.) Sysix, in turn, engaged FGMK to provide the opening balance sheet and the annual audits of its financial statements. (Compl. ¶ 10.) FGMK also assisted Sysix in preparing additional documents for Comerica, such as the quarterly statements of Sysix's chief financial officer and draft financial statements for Comerica to review in order to determine whether it would waive covenants in the loan agreement. (Compl. ¶ 12.) In each year between 2001 and 2008, FGMK issued unqualified[1] opinions on the financial statements of Sysix representing that each presented fairly, in all material respects, the consolidated financial position of Sysix, the results of its

---

[1] FGMK qualified its opinions for the 2002 through 2008 financial statements in one respect not relevant to this Complaint—the effect of Sysix's reporting investments in additional subsidiaries at cost. (Compl. ¶ 13.)

operation, and its cash flow in accordance with accounting principles generally applied in the United States. (Compl. ¶ 13.)

FGMK performed the audits on behalf of Sysix and issued the opinions to Sysix who, in turn, submitted them to Comerica. Comerica alleges that, although FGMK did not directly deliver the audited financial statements to it, FGMK was aware that Comerica would rely on them when extending credit to Sysix. (Compl. ¶¶ 4, 11-12, 14.) In an Independent Auditor's Report, dated June 30, 2009, FGMK acknowledged that the report was "intended solely for the information and use of ... Comerica Bank for the purpose of renewing Sysix['s] ... line of credit." (Pl.'s Resp., Ex. 1.) FGMK also transmitted a letter, dated July 16, 2009, to Comerica retracting previously issued audit reports of Sysix's financial statements. (Pl.'s Resp., Ex. 2.)

By July 2009, Sysix was indebted to Comerica for over $21 million. (Compl. ¶ 15.) According to Comerica, Sysix's assets listed on its audited financial statements were intentionally and grossly overstated to perpetrate a massive fraud that was carried out, in part, by Sysix's principal owner and president, John Sheaffer. (Compl. ¶ 19.) Sheaffer allegedly created fictitious transactions falsely inflating Sysix's sales, revenue and accounts receivable while, in reality, Sysix's actual sales, revenue and accounts receivable were but a fraction of those reported on the financial statements certified by FGMK. (Compl. ¶ 19.) Sysix ceased operations in July 2009 after Sheaffer committed suicide, leaving a letter related to the fraud. (Compl. ¶ 24.)

On October 22, 2009, Comerica filed suit in the Wayne County Circuit Court alleging that FGMK negligently made false representations concerning Sysix's financial statements, that Comerica relied to its detriment on the false representations by extending credit to

3

Sysix in increasing amounts and for new periods of time, and as a result Comerica suffered a substantial economic loss. (Compl. ¶¶ 43-46; Notice of Removal, Ex. A [Docket Text # 3].) FGMK removed the case to this Court on November 18, 2009. (Notice of Removal [Docket Text # 1].)

This matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction and improper venue; or, in the alternative, for transfer of venue.

## II. Standard

### A. Rule 12(b)(2) Motion to Dismiss Standard

A plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). When the Court does not conduct an evidentiary hearing on this issue when deciding a Rule 12(b)(2) motion to dismiss, Plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). A plaintiff can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotations and citation omitted). In reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court views the pleadings and affidavits in the light most favorable to the plaintiff. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Theunissen*, 935 F.2d at 1459). The Court "will not consider facts proffered by the defendant that conflict with those offered by [the plaintiff]." *Neogen*, 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

**III. Analysis**

FGMK's motion challenges this Court's personal jurisdiction and venue and, alternatively, asks the Court to transfer this case to the Northern District of Illinois. The Court will consider FGMK's arguments with respect to personal jurisdiction first.

**A. Personal Jurisdiction**

To establish personal jurisdiction in this diversity action,[2] Comerica must show that the Court's exercise of personal jurisdiction is both: (1) authorized by "the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888. In Michigan—because its long-arm statute extends to the limits of due process—these two inquiries merge into one. *See Perry Drug Stores v. CSK Auto Corp.*, 93 Fed. App'x 677, 680 (6th Cir. 2003).

**1. Michigan's Long-Arm Statute**

In Michigan, the exercise of personal jurisdiction over a non-resident may be "general" or "limited." *Neogen*, 282 F.3d at 888 (citing Mich. Comp. Laws § 600.711 (general) and § 600.715 (limited)). General personal jurisdiction extends to a defendant "regardless of whether the claim at issue is related to its activities in the state or has an in-state effect," whereas limited personal jurisdiction "extends only to claims arising from the defendant's

---

[2] Comerica Bank, is a Texas banking association, successor in interest by merger to Comerica Bank, a Michigan banking corporation. (Compl. ¶ 1.) Comerica is a Texas corporation. (Def.'s Resp. to Court's Order to Show Cause, Ex. A [Docket Text # 10].) According to Defendant, Comerica's principal place of business is also in Texas. (*Id.* at 2.) FGMK is an Illinois LLC, whose twenty-three (23) constituent members are citizens and residents of the State of Illinois, with a principal place of business in Bannockburn, Illinois. (Compl. ¶ 2; Def.'s Resp. to Court's Order to Show Cause at 2 [Docket Text # 10].)

activities that were either within Michigan or had an in-state effect." *Neogen*, 282 F.3d at 888.

General personal jurisdiction exists over a corporation that is incorporated in Michigan, consents to jurisdiction in Michigan, or engages in continuous and systematic business in Michigan. Mich. Comp. Laws § 600.711. Because the Complaint is devoid of any allegation that would support an inference that FGMK is subject to general personal jurisdiction in Michigan, any basis for jurisdiction over FGMK rests upon limited personal jurisdiction.

Under Michigan's long-arm statute, the Court can exercise limited personal jurisdiction over corporations in claims:

> arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing any *act to be done, or consequences to occur, in the state resulting in an action for tort*.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715 (emphasis added).

Comerica contends that it has satisfied its burden of showing that the Court has limited personal jurisdiction over FGMK under § 600.715(2). Comerica's professional malpractice claim, in the nature of a tort action, is based on FGMK's negligent and false representation that Sysix's financial statements fairly presented its financial condition. Comerica alleges that it relied upon NGSK's representations in Michigan, causing it to

make lending decisions to advance credit to Sysix in Michigan,[3] and resulted in a substantial economic loss to Comerica. (*See* Compl. ¶¶ 4, 11-14; Pl.'s Resp., Exs. 1-2.) Comerica, therefore, concludes that FGMK's alleged tortious conduct caused acts to be done or consequences to occur in Michigan.

FGMK, on the other hand, argues that Comerica has failed to demonstrate FGMK did or caused any act to be done or consequence to occur in Michigan resulting in an action for tort. According to FGMK, all of the accounting and audit services from which Comerica's alleged tort claims arise were performed entirely within the state of Illinois for its Illinois client, Sysix. FGMK also contends that it had no contractual relationship with Comerica nor did it provide Comerica with any financial information regarding Sysix. FGMK, therefore, concludes that the unilateral conduct of Comerica and Sysix and the mere fact that an injury may have occurred in Michigan is not sufficient to establish personal jurisdiction under § 600.715(2).

Even if limited personal jurisdiction is proper under Michigan's long-arm statute, Comerica must also show that the exercise of jurisdiction over FGMK is constitutionally permissible. In Michigan, because the long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, this Court need only determine whether the exercise of personal jurisdiction over FGMK comports with due process. *See Perry Drug Stores*, 93

---

[3] Prior to a merger in 2007—for the first six years of the loan agreement—Comerica was a Michigan corporation with its principal place of business in Michigan. According to Comerica, the initial decision to enter into a loan agreement with Sysix and all subsequent Sysix-related lending decisions were almost entirely made by Comerica personnel in Detroit, Michigan. Comerica also reviewed and relied upon FGMK's audit reports in Michigan. Both before and after the merger, the loan was administered in Michigan. (Pl.'s Resp., Ex. 3, Allen Aff. ¶¶ 5, 10, 11.)

Fed. App'x at 680. Thus, the two inquiries merge where, as here, the forum state's long-arm statute extends personal jurisdiction to the limits permitted under the Due Process Clause. The relevant inquiry, therefore, is whether the exercise of personal jurisdiction over FGMK constitutes a violation of the Due Process Clause, and the Court finds that is does.

### 2. Due Process

To exercise personal jurisdiction over a defendant, the defendant must have had minimum contacts with the forum so that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1944).[4] In determining whether a nonresident defendant has sufficient contacts to support personal jurisdiction, the Sixth Circuit has established a three-part inquiry:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Comerica argues that FGMK made itself subject to personal jurisdiction in Michigan when it performed professional accounting services with: (1) knowledge of the purpose of the audit; (2) knowledge of what its client, Sysix, planned to do with the audit; (3)

---

[4] Under the Fourteenth Amendment, the due process requirement serves two functions: (1) it protects the defendant against the burden of litigating in a distant or inconvenient forum; and (2) it ensures that the states do not reach out beyond the limits imposed on them as coequal sovereigns. *Handley v. Indiana & Michigan Electric Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984).

knowledge of the existence of a third party, Comerica; and (4) knowledge that the third party would rely upon the audit. In support, Comerica primarily relies on *Comm'r of Ins. v. Albino*, 572 N.W.2d 21 (Mich. Ct. App. 1997).

In *Albino*, like here, there was no contract or relationship between the plaintiff and the professional defendant: the *Albino* defendant "ha[d] never done business in Michigan, ha[d] no employees or property in Michigan, ... provided no auditing or accounting services in Michigan," was not hired or paid in Michigan, and "never directly sent any of its audit opinions to anyone in Michigan." *Id*. at 23. The *Albino* court held that the exercise of personal jurisdiction was proper because the defendant's audit, performed with the awareness that it would be relied upon in Michigan, amounted to activity purposefully directed toward Michigan—the auditors "knew that its audit opinions would be sent to and relied upon by" identified third parties in Michigan. *Id*. at 23-24.

Comerica argues that FGMK, like the professional defendant in *Albino*, knew that the purpose of the audit was to extend or renew the loan agreement with Comerica, that Comerica was the intended beneficiary of its audit reports, and that Comerica would rely on these audit reports. Thus, Comerica contends, FGMK is subject to personal jurisdiction in Michigan. This Court, however, finds that Comerica's reliance on *Albino* is misplaced.

The facts of this case are distinguishable from *Albino* and demand a different result: the professional defendant's client in *Albino* was a Michigan resident, whereas FGMK's client (Sysix) is not a Michigan resident.[5] In exercising personal jurisdiction over the

---

[5] In *Albino*, the defendant's client, CLIC, "was a mutual insurance company organized under the laws of Canada, with its principal office in Toronto, Ontario, Canada" who "did business in Canada, Michigan, elsewhere in the United States, and in the United Kingdom" and utilized Michigan as its "state of entry" to "conduct business throughout the United

9

professional defendant, the *Albino* court relied, in part, on the fact that the defendant's client was a Michigan resident. *See id.* at 24-25, 25 n.4, 26.

### a. Purposeful Availment

To be subject to personal jurisdiction, a defendant must "purposefully avail himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

> "Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State, and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.
>
> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the unilateral activity of another party or a third person.

*Neogen*, 282 F.3d at 890 (emphasis in original) (internal quotations and citations omitted).

This Court finds that the facts of this case do not satisfy the purposeful availment requirement. Here, FGMK's contacts with Michigan were not only "random," "fortuitous" and "attenuated," but were almost nonexistent. FGMK, therefore, has not purposefully availed itself of the privilege of conducting activities or causing a consequence in Michigan.

FGMK is an Illinois LLC with its principal place of business in Illinois. FGMK acts as a certified public accounting firm providing accounting services for businesses located

---

States by qualifying as an insurer" under Michigan's applicable statutes. *Albino*, 572 N.W.2d at 551. Thus, "CLIC became a domicilary [sic] by virtue of M.C.L. § 500.431a ... because it used Michigan as its state of entry." *Id.* at 556.

predominately in Illinois. FGMK is licensed with the Illinois Division of Financial and Professional Regulation. FGMK has never maintained an office, registered an agent or had any employees in Michigan. None of its managers or members reside in Michigan. FGMK has never owned property, solicited business or advertised in Michigan. FGMK has never maintained a telephone number or bank account in Michigan. FGMK is not licensed to practice in Michigan, nor does it pay taxes in Michigan. (Def.'s Mot., Ex. B, Donato Decl. ¶¶ 3-6.)

FGMK performed the audit and accounting services on behalf of non-party Sysix, a Delaware corporation, with its principal place of business in Chicago, Illinois. All negotiations between FGMK and Sysix took place in Illinois. All of the accounting services FGMK performed for Sysix were also completed within the state of Illinois. The audit reports were delivered to Sysix in Illinois, and FGMK did not forward any financial information regarding Sysix to Comerica in Michigan. The only communications between FGMK and Comerica were sporadic and intermittent, and these communications were not initiated by FGMK but rather by Sysix.[6] (Def.'s Mot., Ex. B, Donato Decl. ¶¶ 7-10.) FGMK has not conducted activities in Michigan, thus, it has not purposefully availed itself of the privilege of acting in the forum state.[7]

---

[6] FGMK transmitted one email to Comerica: the July 16, 2009 correspondence from FGMK addressed to Sysix with copies to Comerica. This single communication, however, is irrelevant for jurisdictional purposes, as it post-dates any alleged decision by Comerica to lend money to Sysix. *See Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439, 445 n.5 (Mich. 1987). Nevertheless, even if this Court were to consider this email correspondence for jurisdictional purposes, the result would not change.

[7] Unilateral acts by other parties, including the conduct of unrelated third parties, may not be used to justify the imposition of personal jurisdiction. Thus, the activities of Comerica and Sysix will not suffice to establish personal jurisdiction over FGMK in Michigan. *See*

The minimum contacts test can also be satisfied by causing a consequence in the forum state. *See Scotts Co. v. Aventis S.A.*, 145 Fed. App'x 109, 113 n.1 (6th Cir. 2005) ("Under the effects test, first articulated in *Calder v. Jones*, 465 U.S. 783 (1984), personal jurisdiction exists where an individual purposefully directs activities towards the forum state with the intent to cause harm there."). Merely causing a consequence, however, does not always satisfies the minimum contacts test. The Sixth Circuit has "applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises." *Id.* Here, FGMK's conduct was not aimed at Michigan and the focus of its activities was Illinois, not Michigan. Thus, the mere fact that Comerica may have suffered a loss in Michigan does not, without more, satisfy the minimum contacts test.

Because FGMK had insufficient contacts with Michigan, it could not reasonably anticipate being haled into court in this state. FGMK has not purposefully availed itself of the privilege of conducting activities or causing a consequence in Michigan.

### b. Claims Arise from Contacts with Michigan

As to the second prong of the due process analysis, the Sixth Circuit has articulated the appropriate standard in various ways; i.e., "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts," or "whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air*

---

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 ("The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State.") (internal quotations and citations omitted).

*Prod. & Controls*, 503 F.3d at 553 (internal quotations and citations omitted). The Sixth Circuit has also clarified that the standard is a lenient one. *Id.* As discussed above, FGMK had almost no contact and conducted no activities within Michigan: it negotiated for, performed and delivered all of its accounting services in Illinois for its Illinois client. Thus, the cause of action did not arise from FGMK's activities within this state.

### c. Exercise of Personal Jurisdiction Reasonable

In evaluating the third prong, the Court considers whether "the acts of the defendant or consequences caused by the defendant ... have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Air Prod. & Controls*, 503 F.3d at 554 (internal quotation and citation omitted). Because FGMK did not purposefully avail itself of the benefits and privileges of doing business in Michigan—as it conducted no activities within Michigan—the acts or consequences allegedly caused by FGMK are not so substantially connected with Michigan to make the exercise of jurisdiction reasonable.

Accordingly, the Court holds that Comerica has failed to establish a prima facie case of the Court's personal jurisdiction over FGMK. FGMK's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is therefore GRANTED. This result makes it unnecessary for the Court to consider FGMK's venue and transfer arguments.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.


      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated: February 3, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 3, 2010, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager